■ THE PEOPLE OF THE STATE OF NEW YORK, v RICHARD DENNIS FISHER, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered April 27, 1976, convicting him of criminal possession of a controlled substance in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress evidence. Judgment reversed, on the law and the facts, motion to suppress evidence granted, and indictment dismissed (see *People v Ingle,* 36 NY2d 413). Latham, J. P., Shapiro and Hawkins, JJ., concur; Suozzi, J., dissents and votes to affirm the judgment, with the following memorandum: The majority herein is of the view that the police had no right to stop the car driven by the defendant for a routine traffic check under the authority of *People v Ingle* (36 NY2d 413), and for that reason alone the motion to suppress must be granted. I disagree with the majority's conclusion because, in my view, the holding of *People v Ingle (supra)* sanctions the conduct of the police herein in stopping defendant's car for a routine traffic check. The facts are as follows: On November 9, 1974, at about 4:00 P.M., the police officers herein (one of whom was an expert in the field of narcotics) observed a brand new 1974 Mercury Cougar traveling in the immediate area of the 103rd Precinct. The officers decided to conduct a routine traffic check of the car, i.e., to stop it and determine if the operator was licensed and the car registered and insured. The officers started to follow the Mercury Cougar. The defendant, identified as the driver, glanced into his rear view mirror and accelerated. The officers followed for one block, at which time the dome light and police siren were placed into operation. The officers approached the defendant, who appeared "very nervous" since his hands were "shaking". Defendant asked what he had done. The officers advised him that he had been stopped for a routine traffic check and requested him to produce his license, registration and insurance card. Defendant produced a wallet and, while thumbing through it, the officer observed an opaque, sealed manila envelope protruding from the wallet. Based on his experience, the officer believed that the envelope

contained marijuana. He stated to the defendant: "I hope that's not what I think it is." The officer asked to see the envelope. As he handed the envelope to the officer, the defendant stated: "I forgot that it was in there. I don't use the stuff myself. I have it for my girlfriend." The officers then opened the envelope and discovered what appeared to be marijuana. Defendant was arrested and taken to the precinct. The Mercury Cougar was also taken to the precinct and, upon an inventory search, heroin was discovered beneath the driver's seat. In holding that defendant's motion to suppress must be granted solely pursuant to *Ingle,* the majority apparently agrees with the Criminal Term, as I do, that there is no merit to defendant's remaining arguments concerning the admissibility of his statement or the seizure of the marijuana and heroin. However, I part company with the majority's conclusion regarding the effect of the application of *Ingle* to the facts at bar. In *Ingle* the Court of Appeals held that while an "arbitrary stop of [an] automobile for a purportedly 'routine traffic check' is impermissible" (36 NY2d 413, 419, *supra),* a routine traffic check is permissible when there is a "factual basis", however "minimal", to support such action and that "An actual violation of the Vehicle and Traffic Law need not be detectable" (p 420). The court in *Ingle* specifically stated (p 420): "All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion' *(Terry v Ohio,* 392 US 1, 21)". In *Ingle* the court held invalid the stop of a vehicle by a State trooper who "has no information concerning the defendant or his vehicle" (p 420), but who was apparently merely interested in th excellent condition of defendant's 1949 Ford. In my view, the facts at bar are clearly distinguishable from those in *Ingle.* In making their decision to stop the Mercury Cougar driven by defendant, the officers relied on the fact that during the prior two months, 37 Mercury model cars, of which 25 to 30 were Mercury Cougars belonging to people living outside of the precinct, had been found within the confines of the 103rd Precinct. In addition, a large number of Mercury Cougars had been stolen from residents living in the 103rd Precinct. The officer had obtained this information from reliable sources, including a master list of stolen vehicles, complaint reports and discussions with various police officers, including those assigned to the Auto Crime and Auto Squad Units. Accordingly, the officer's attention "insofar as stolen vehicles was concerned was mainly directed at Mercury Cougars at that time." Moreover, at the time the officers began to follow defendant in the Mercury Cougar, the defendant accelerated the speed of his vehicle. Under these circumstances, and the authority of *Ingle,* it is my view that the police officers had a factual basis to stop the defendant's car and conduct a routine traffic check (see, also, *People v Singleton,* 41 NY2d 402). Accordingly, I dissent and vote to affirm.